*75
 
 Turner, J.
 

 Two boys, wbo had thumbed a ride from a total stranger, murdered him in cold blood in order to steal his automobile for the purpose of using the automobile in a planned kidnaping. They were apprehended, indicted by a grand jury, plead not guilty, later appeared in court with attorneys of their own choosing, withdrew pleas of not guilty, plead guilty as charged in the indictment, waived trial by jury and consented to be tried by a court of three judges. After the court had explained the effect of their waiver of a jury trial and their constitutional right to be tried by a jury, the boys adhered to their pleas of guilty and the waiving of a jury trial.
 

 Under the applicable statutes it became the duty of the court to examine the witnesses,' determine the degree of the crime and pronounce sentence accordingly. The statute further provides that: “The court may extend mercy and reduce the punishment for such offense * * V’
 

 The court did examine the witnesses, determined the degree of the crime to be murder in the first degree and pronounced sentence accordingly. The court recommended mercy for one defendant. The defendant for whom mercy was not recommended now claims, as appellant here, that he was not accorded due process. It will be necessary to quote liberally from the record to give a clear picture of the case we are deciding.
 

 Mercy was all that was sought by appellant’s counsel in presenting his case to the three judges.
 

 No question is here raised that appellant Frohner was not guilty of murder in the first degree if he was legally sane and had a fair hearing,
 
 i. e.,
 
 due process. The real complaint is that mercy (a matter within the discretion of the three-judge court) was not extended.
 

 While this court is not required to determine as to the weight of the evidence in a criminal case, neither
 
 *76
 
 is it forbidden so to do. (Section 13459-1, General Code.) As federal questions have been raised we shall weigh the evidence and do all things required to determine whether appellant has been accorded due process under both the Constitution of the United States and the Constitution of Ohio.
 

 • Section 13449-5, General Code, provides:
 

 “No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court [for specified causes not covered by an assignment of error in this case] * * * nor for any other cause whatsoever unless it shall affirmatively appear from the record that the accused was prejudiced thereby or was prevented from having a fair trial.”
 

 Appellant’s assignments of error will be separately set out and discussed.
 

 Appellant’s first assignment of error is as follows:
 

 ‘ ‘ First: That the Court of Common Pleas committed error prejudicial to defendant-appellant, then a minor sixteen (16) years of age, in permitting him to withdraw his plea of ‘not guilty’ and enter a plea of ‘guilty’ as charged in the indictment, without properly and fully apprising defendant-appellant of the nature and legal significance of his said plea, without securing an express and intelligent consent of defendant-appellant, and without fully advising defendant-appellant of all of his rights, all in contravention of the Constitution of the state of Ohio and of the United States.”
 

 The Juvenile Court bound this appellant and his co-defendant over to the Court of Common Pleas under Section 1639-32, General Code, after full investigation and after a mental and physical examination of each defendant.
 

 As shown by the bill of exceptions, the following took place on Tuesday, February 11, 1947, at the hearing before Judge Jenkins, presiding in criminal court:
 

 
 *77
 
 Prosecuting attorney: “Now then, Your Honor, the defendants are here in court. As I understand from, counsel, they have decided to waive their right to triall by jury and submit to a judge or judges of the Court of Common Pleas as provided by law. If that is-agreed, then the waivers have been prepared amdl should be signed in open court in the presence of Your Honor.
 

 “The Court: Have the originals here?”
 

 Prosecutor: “Yes, the originals are there.
 

 “The Court: Will you come forward, Donald Frohner and Arthur Chapman, at this time?
 

 “Mr. Haynes [attorney for Chapman]: They are reading, Your Honor.
 

 “The Court: Well, I was going to have it read to> them. I just want to read this to you boys. Just step’ forward here. This is the law: ‘In all criminal cases-pending in courts of record in this state, the defendant, shall have the right to waive a trial by jury, and may,, if he so elect, be tried by the court without a jury. Such waiver and election by a defendant, shall be in writing,, signed by the defendant and filed in said cause and' made a part of the record thereof. It shall be entitled! in thé court and cause, and in substance as follows:’’ —You can follow and watch the copies now, this is what the law says, each one, the named ‘defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a judge of the court in which the said cause may be pending.’ And there is another provision of law that is written into that, or by judges chosen and selected for as provided by statute. ‘I fully understand that' under the laws of this state, I have a constitutional right to a trial by jury.’ Then the law continues: ‘Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has.
 
 *78
 
 had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial.’ Now, that being the law and you having read this waiver, do you desire to sign it?
 

 “Mr. Haynes [attorney for Chapman]: Now, if you will excuse me being rather — I don’t intend to be pompous — will Your Honor explain to them in your own very good English which I know you can use and which is more susceptible of understanding by them, your view of the statute.
 

 “The Court: You mean as to procedure?
 

 “Mr. Haynes: Yes, I would like to have you explain in your very good English that you always use.
 

 “The Court: Well—
 

 *
 
 ‘ Mr. Haynes: I have done, to the best of my ability, explained to them.
 

 “The Court: Well, simply it is this, that our Constitution, for an offense such as you are charged with, provides that everyone shall first be charged by a grand jury; that has happened. Second, that you shall have a right to be tried by jury, which is a fact-finding body drawn from the citizens of this county. Recently this law that I have just read to you has been passed, which permits a person accused of a crime of this kind to waive this constitutional right to be tried by twelve men and women constituting the jury and to be tried by a court of three judges instead. Now, this is purely a matter of personal right. You can do it or you needn’t do it. If you don’t do it you will be tried by a jury. If you should do it you will be tried by three judges, and this paper that has been prepared in accordance with the law I read to you asks for a court of three judges instead of a jury of twelve. You reserve the right at any time before you are tried by three judges, if you sign this waiver, you reserve the right
 
 *79
 
 to again be tried by a jury, if you change your mind in the meantime. Now, those are your rights and that is the law in the situation. Now, if you desire to sign this waiver here, all right. Do you desire to sign it?
 

 “Donald Frohner: Yes.
 

 “The Court: Do you?
 

 ‘ ‘ Arthur Chapman: Yes.
 

 ‘
 
 ‘
 
 The Court: All right, boys, just sign it.
 

 “(Each of said defendants thereupon signed the waiver.)
 

 ‘ ‘ The Court: All right, gentlemen.
 

 ‘ ‘ Mr. Beard [attorney for Frohner]: If Your Honor please, Mr. Haynes and I would like an opportunity to further see you in chambers this morning, if possible,, after you are through with these arraignments.
 

 ‘ ‘ The Court: That will be all right.
 

 “Mr. Beard: If it is convenient for you.
 

 “The Court: Yes, it is certainly convenient. We will do it right now. Do you desire to have these boys present?
 

 ‘ ‘ Mr. Beard: I don’t believe that will be necessary. ’ *
 

 The record does not show what, if anything, took place in chambers.
 

 The bill of exceptions further discloses that on February 24,1947, the following proceedings were had before the three judges:
 

 “Judge Jenkins: The State of Ohio versus Donald Frohner and Arthur Chapman — ”
 

 Prosecutor: “I think, Your Honors, at this time counsel for the defendants would like to make some sort of an announcement.
 

 “Mr. Beard: On behalf of defendant Donald E. Frohner we would like to enter a plea of guilty to the indictment and ask the court for an opportunity to offer evidence in mitigation on the question of mercy-being recommended by the court.
 

 
 *80
 
 “Mr. Haynes: Having the conviction and knowing you men as I have so many years, the law you will apply in this instance will not only be just but I know will be humane, with that thought in mind I desire at this time to withdraw the plea of not guilty and enter by Arthur Chapman a plea of guilty requesting we be given full opportunity in all respects to introduce mitigating circumstances or any other evidence that might tend to cast some light on this very serious matter.
 

 ‘ ‘ Judge Jenkins: You understand these pleas do not in any way lessen the necessity of all the evidence, both of the crime itself and of any circumstances, going toward mitigating the penalty, it does not in any way affect the necessity of all that evidence being before us.
 

 “Mr. Beard: We understand that, Your Honor. In that respect, if Your Honors please, it is my understanding that the name Donald E. Frohner appears first in the indictment and Mr. Haynes and I have decided that the evidence relative to Donald E. Frohner will be admitted first and the evidence relative to Arthur Chapman be given later.
 

 “Judge Jenkins: The court has already ordered a joint trial, the evidence which the state will have to introduce will apply to both and, of course, whatever evidence you offer will necessarily be offered for each defendant respectively so I don’t think there is any difference.
 

 “Mr. Haynes: Knowing Mr. Beard’s intention and mine as well in order to keep things in an orderly fashion he will put on his evidence and then I in turn will proceed.
 

 “Judge Jenkins: We are all agreed on that. Donald Frohner, step forward to the bar, please; Arthur Chapman, step forward, please, with counsel. I desire to read the entry that the court has now made on the request and suggestion of your counsel, and I wish you
 
 *81
 
 to listen and later tell me whether you understand it and whether it is your personal wish: ‘February 24, 1947, case called for trial; Defendant Frohner and Defendant Chapman severally with counsel each withdraws plea of not guilty and enters plea of guilty of murder in the first degree as charged in the indictment, and asks under General Code 13442-5 that the court examine the witnesses, hear all the evidence, determine the degree of crime and thereon to extend mercy and reduce the punishment to life imprisonment in like manner as upon recommendation by a jury as provided in General Code 12400, ’ 12400 is the statute defining murder in the first degree. Is that your understanding, Frohner?
 

 “Defendant Frohner: Yes, sir.
 

 “Judge Jenkins: And your desire?
 

 “Defendant Frohner: Yes, sir.
 

 ‘ ‘ J udge J enkins: Is that your understanding, Chapman?
 

 “Defendant Chapman: It is, Your Honor.
 

 “Mr. Haynes: At this time in view of the fact that at least the one parent, the father of my boy, is here I would like to have the court ask of him likewise. I would like his father he asked the same question. It may not be according to Hoyle but I don’t think it will hurt anything. Do you understand that, Mr. Chapman ?
 

 ‘ ‘ Judge J enkins: I regret to say we are here dealing only with the defendants and their counsel, and I take it all those circumstances have been considered by you gentlemen as counsel.
 

 “Mr. Beard: And with their parents, Your Honor.
 

 ‘ ‘ Judge J enkins: Included in your duty is, of course, your duty to consult them. However, as a court we cannot do that.
 

 “Mr. Haynes: The record may show the parents are here?
 

 
 *82
 
 “Judge Jenkins: Yes.
 

 ‘ ‘ Mr. Haynes: In open court.
 

 “Judge Jenkins: If you desire the record to show that. That is all, you may be seated.”
 

 It will thus' be seen from the foregoing proceedings that there were explanations made to defendants in respect of the withdrawals of their pleas of not guilty and entering pleas of guilty as charged in the indictment. The first bearing, when trial by jury was waived, was before Judge Jenkins as presiding judge in the criminal court and took place on February 11, 1947. The second hearing, when pleas of guilty were entered, was before the three-judge court and took place on February 24, 1947.
 

 During his opening statement counsel for appellant said: “With that thought in mind I have worked industriously with the father and mother and brother and members of this family, and I have made it my business to personally call on every man and woman in the city of Youngstown, schoolteachers, etc., that knew this boy before this thing happened, trying to find that out.”
 

 During Mr. Beard’s argument on his motion for new trial, etc., he said:
 

 “So, he and his family asked me, and I asked them what they thought about trying this matter to a jury, and they said, Mr. Beard, with all the things going around town and all the untrue things being said about this boy we certainly don’t feel that we would have any sort of a chance of getting a fair and impartial jury.”
 

 No effort was made to transfer the trial to another county as provided in Section 13427-1, General Code hereinafter quoted.
 

 Mr. Beard continued: “I explained to them there was another manner of trial under our procedure. I went into the history of you men, I told this mother I had known Judge Jenkins ever since I was a small boy,
 
 *83
 
 that in trying jury cases over here I would see him in the back room and talk with him about different things he had done; that his daughter went to the same school I did, that I knew he was a man who had had hundreds of criminals, hardened men come before him and that he could certainly tell her boy wasn’t that kind of a boy. I knew Judge Jenkins would be one of the judges. * * *”
 

 It will also be noted from the foregoing that while Mr. Haynes, attorney for Chapman, asked the court to explain further, which request was complied with by Judge Jenkins, Mr. Beard on behalf of defendant Frohner made no such request. Apparently, Mr. Beard was satisfied that his client (appellant) intelligently understood. Mr. Haynes made the further request that his client’s parent be interrogated by the court. Upon being reminded that such was the duty of counsel and the court took it that those circumstances had been considered by counsel, Mr. Beard (appellant’s counsel) said: “And with their parents.” Mr. Haynes then said: “The record may show that the parents are here.” Certainly the court was justified in assuming that Frohner understood, intelligently, the nature and legal significance of the withdrawal of his plea of not guilty and the entering of a plea of guilty as charged in the indictment.
 

 After the opening statement of the prosecutor, neither Frohner nor his counsel asked for a withdrawal of the waiver and the right of a trial by jury. Instead, counsel for Frohner said in his opening statement: “Now, men, we have here a terrible situation; with what Mr. Ambrose [the prosecutor] had to say our evidence will not be in conflict. We have entered a plea of guilty in that respect * *
 

 New counsel, who came into the case after the pronouncement of sentences, and who baldly stated, “Be
 
 *84
 
 fore I attempt to discuss the case I must necessarily appreciate that 1 can have very little, if any, conception of all the facts comprehended within the evidence adduced upon trial. I have made very little effort to know all of the facts as produced by the evidence,” attempts to explain the pleas of guilty in the following language: .“It appeared to counsel that the only expedient thing that could be done, with the adverse public opinion which had been thus falsely aroused, was to submit the matter to the court. This was done as a matter of expediency and not upon any free or individual decision on the part of Donald Frohner himself.”
 

 It would be a sorry state of affairs, indeed, if a defendant and his counsel could make representations to the court with mental reservations to be advanced in case of an unfavorable verdict. What then would become of the requirement that a defendant should be represented by counsel of his own choosing?
 

 Statutes have been enacted in a number of the states similar to the Ohio statute providing that where a person accused of murder in the first degree pleads guilty and waives a jury trial, the degree of the crime may be determined by the court and sentence pronounced accordingly. The state of New Jersey had such a statute which was held to be valid in the case of
 
 Hallinger
 
 v.
 
 Davis,
 
 146 U. S., 314, 36 L. Ed., 986, 13 S. Ct., 105. In the opinion by Mr. Justice Shiras it is said at page 317:
 

 “It is contended on behalf of the appellant that the judgment and sentence of the court of oyer and terminer of Hudson county, New Jersey, whereby he is deprived of his liberty and condemned to be hanged, are void, because the act of criminal procedure of the state of New Jersey, in pursuance of the provisions of which such judgment and sentence were rendered, is repugnant to the 14th Amendment of the Constitution
 
 *85
 
 of the United States, which is in these words: ‘Nor shall any state deprive any person of life, liberty or property without due process of law.’ Such repugnancy is supposed to be found in the proposition that á verdict by a jury is an essential part in prosecutions for felonies, without which the accused cannot be said to have been condemned by ‘due process of law’; and that any act of a state legislature providing for the trial of felonies otherwise than by a common-law jury, composed of twelve men, would be unconstitutional and void.
 

 “Upon the question of the right of one charged with crime to waive a trial by jury, and elect to be tried by the court, when -there is a positive legislative enactment, giving the right so to do, and conferring power on the court to try the accused in such case, there are numerous decisions by state courts, upholding the validity of such proceeding.
 
 Dailey
 
 v.
 
 State,
 
 4 Ohio St., 57;
 
 Dillingham
 
 v.
 
 State,
 
 5 Ohio St., 280;
 
 People
 
 v.
 
 Noll,
 
 20 Cal., 164;
 
 State
 
 v.
 
 Worden,
 
 46 Conn., 349;
 
 State
 
 v.
 
 Albee,
 
 61 N. H., 423, 428. * * # and we can, therefore, have no doubt that the proceeding to ascertain the degree of the crime where, in an indictment for murder, the defendant enters a plea of guilty, is constitutional and valid. Statutes of like or similar import have been enacted in many of the states, and have never been held unconstitutional. ,On the other hand, they have been repeatedly and uniformly held to be constitutional.
 

 “In Ohio the statute is: ‘If the offense charged is murder and the accused be convicted by confession in open court, the court shall examine the witnesses and determine the degree of the crime, and pronounce sentence accordingly.’ In
 
 Dailey
 
 v.
 
 State,
 
 4 Ohio St., 57, the statute was held to be constitutional and a sentence thereunder valid. ’ ’
 

 Mr. Justice Shiras then reviewed the procedure in cases in other state courts.
 

 
 *86
 
 Among the cases involving the waiver of a jury in criminal cases decided by the highest court of other states are found the following:
 

 Hoelscher
 
 v.
 
 State,
 
 Supreme Court of Indiana, 223 Ind., 62, 57 N. E. (2d), 770. This case involved the' indictment of a minor for first degree murder and holds that the accused was not incompetent to plead guilty to a charge of murder in the first degree because he was a minor; further, that he might waive constitutional rights to a trial by jury and representation by counsel if he has been advised of the nature of the charge and his rights to counsel and to a jury.
 

 Brandon
 
 v.
 
 Webb,
 
 Supreme Court of Washington, 23 Wash. (2d), 155, 160 P. (2d), 529. Defendant pleaded guilty to murder in the second degree and was sentenced by the court without the intervention of a jury; held where accused pleaded guilty to a charge of murder in the second degree trial court was not required or permitted to impanel a jury to hear testimony and determine the “degree” of murder.
 

 People
 
 v.
 
 Hough,
 
 26 Cal. (2d), 618, 160 P. (2d), 549. This case holds that where defendant elects to plead guilty to murder he is not deprived of his right to trial by jury under state constitution when sentence is fixed by the court.
 

 Commonwealth
 
 v.
 
 Petrillo,
 
 340 Pa., 33, 16 A. (2d), 50. This case holds that a proceeding under court rule wherein defendant charged with crime waives trial by jury and elects to have his degree of guilt determined by the court, such proceeding is not repugnant to the “due process of law” clause of the 14th Amendment.
 

 As pointed out by Chief Justice Ranney in
 
 Dillingham
 
 v.
 
 State,
 
 5 Ohio St., 280, and by judges in many other cases, the constitutional right of trial by jury is not infringed when the option is given to the accused to have the issue tried by a court or the jury and he
 
 *87
 
 submits tbe cause to tbe court. See, also,
 
 State, ex rel. Warner,
 
 v.
 
 Baer et al., Judges,
 
 103 Ohio St., 585, 134 N. E., 786.
 

 In tbe case of
 
 State
 
 v.
 
 Smith,
 
 123 Obio St., 237, 174 N. E., 768, it was beld:
 

 “Upon the arraignment and plea of an accused, tbe provisions of Section 13442-4 and 13442-5, General Code (113 O. L., 179), giving him tbe right to waive a jury and an election to be tried by tbe court, are mandatory; and tbe court has no power to reject the accused’s waiver, unless suggestion of bis present insanity is made by counsel for tbe accused or unless it otherwise comes to tbe notice of tbe court that tbe accused is not then sane, in conformity with tbe provisions of Section 13441-1, General Code (113 O. L., 1.77) * * *.
 

 ‘ ‘ Sections 13442-4 and 13442-5, General Code, giving tbe accused tbe right to waive a jury and an option to be tried by tbe court, do not violate any of tbe provisions of tbe Obio Constitution.”
 

 In tbe case of
 
 State
 
 v.
 
 Habig,
 
 106 Ohio St., 151, 140 N. E., 195, it was beld in paragraph two of tbe syllabus:
 

 “Where a person is indicted for murder in tbe first degree and pleads guilty to such indictment and tbe court proceeds to take testimony to determine the degree of tbe crime and after bearing evidence determines tbe crime to be first degree murder and imposes tbe death sentence tbe accused has not been denied tbe constitutional right of trial by jury.”
 

 In tbe case of
 
 State
 
 v.
 
 Ferranto,
 
 112 Ohio St., 667, 148 N. E., 362, this court beld as shown by tbe syllabus:
 

 “1. A plea of guilty in a capital offense should be accepted cautiously, and tbe trial judge should fully advise tbe accused of bis rights in tbe premises, and be satisfied that be acts willingly, freely, and deliberately after being so advised, and with knowledge, ap
 
 *88
 
 predation, and understanding of the nature and consequences of such plea of guilty.
 

 “2. The granting permission to withdraw a plea of not guilty and interpose a plea of guilty is a matter within the sound discretion of the trial court, and, if it appear that the accused has been properly advised of his rights, the action of the court in so receiving a plea of guilty will not be disturbed unless some abuse of discretion affirmatively appears.
 

 “3.. Upon a plea of guilty to an indictment for murder in the first degree, the trial court has power, without the intervention of a jury, to determine upon evidence the degree of the crime and, in the event the same be found to be murder in the first degree, to withhold or extend mercy. '
 
 (State
 
 v. Habig, 106 Ohio St., 151, 140 N. E., 195, approved and followed.)
 

 “4.
 
 Where, upon a trial for murder in the first degree, all the evidence has been introduced, including that of the accused testifying in his own behalf, and after both sides have rested and the state has concluded its opening argument, the defendant, upon advice of counsel, and after being cautioned and admonished as to his rights by the court, withdraws his plea of not guilty and enters a plea of guilty, it is not an abuse of discretion for the trial judge, who heard all the evidence introduced in the case, in determining the degree of the crime the same day while the evidence was fresh in his mind, to find the defendant guilty of murder in the first degree with no extension of mercy, without hearing anew the evidence relating thereto; it not appearing that new evidence was tendered by the accused after he had entered a plea of guilty.”
 

 Counsel now complain that Section 2 of Article III of the federal Constitution was not read to appellant here. The court was not asked to explain that section. However, the record shows that the court explained to
 
 *89
 
 the defendant that under the Constitution he had a right to trial by jury. Even if the foregoing clause and the provision of the Sixth Amendment to the federal Constitution were applicable to a prosecution in a state court for an offense against the peace and dignity of the state, we are of the opinion that the full measure of caution laid down in the case of
 
 Patton
 
 v.
 
 United States,
 
 281 U. S., 276, 74 L. Ed., 854, 50 S. Ct., 253, 70 A. L. R., 263, which appellant calls to our attention, was observed. It is to be noted that the
 
 Patton case
 
 did not involve a plea of guilty.
 

 In the
 
 Patton case
 
 Mr. Justice Sutherland discussing the procedure in the federal courts, said at page 290:
 

 “It follows that we must reject
 
 in limine
 
 the distinction sought to be made between the effect of a complete waiver of a jury and consent to be tried by a less number than twelve, and must treat both forms of waiver as in substance amounting to the same thing. In other words, an affirmative answer to the question certified logically requires the conclusion that a person charged with a crime punishable by imprisonment for a term of years may, consistently with the constitutional provisions already quoted, waive trial by a jury of twelve and consent to a trial by aiiy lesser number,
 
 or by the coitrt ivithout a jury.
 
 [Italics ours.] „
 

 “We are not unmindful of the decisions of some of the state courts holding that it is competent for the defendant to waive the continued presence of a single juror who has become unable to serve, while at the same time denying or doubting the validity of a waiver of a considerable number of jurors, or of a jury altogether. See, for example,
 
 State
 
 v.
 
 Kaufman,
 
 51 Iowa, 578, 580, with which compare
 
 State
 
 v.
 
 Williams,
 
 195 Iowa, 374;
 
 Commonwealth, ex rel. Ross,
 
 v.
 
 Egan,
 
 281 Pa., 251, 256, with which compare
 
 Commonwealth
 
 v.
 
 Hall,
 
 291 Pa., 341. But in none of these cases are we able to find any persuasive ground for the distinction.
 

 
 *90
 
 “Other state courts, with, we think, better reason, have adopted a contrary view. In
 
 State
 
 v.
 
 Baer,
 
 103 Ohio St., 585, a person charged with manslaughter had been convicted by eleven jurors. The trial began with a jury of twelve, but, one of the jurors becoming incapable of service, the trial was concluded with the remaining eleven. In disposing of the case, the state supreme court thought it necessary to consider the broad question (p. 589) : ‘* * * whether the right of trial by jury, as guaranteed by Sections 5 and 10 of the Bill of Rights, can be waived.’ After an extensive review of the authorities and a discussion of the question on principle, the court concluded that since it was permissible for an accused person to plead guilty and thus waive
 
 any
 
 trial, he must necessarily be able to waive a
 
 jury
 
 trial.” (Court’s italics.)
 

 At page 301, Mr. Justice Sutherland said:
 

 “But this court has always held, beginning at an early day, that, notwithstanding the imperative language of the statute, it was competent for the parties to waive a trial by jury. The early cases are collected in a footnote to
 
 Kearney
 
 v.
 
 Case,
 
 12 Wall., 275, 281, following the statement:
 

 “ ‘Undoubtedly both the Judiciary Act and the amendment to. the Constitution secured the
 
 right
 
 to either party in a suit at common law to a trial by jury, and we are also of opinion that the statute of 1789 intended to point out this as the mode of trial in issues of fact in such cases. Numerous decisions, however, had settled that this right to a jury trial might be waived by the parties, and that the judgment of the court in such cases should be valid.’ ”
 

 On page 308, Mr. Justice Sutherland said:
 

 “The view that power to waive a trial by jury in criminal cases should be denied on grounds of public policy must be rejected as unsound.”
 

 
 *91
 
 As the
 
 Patton case
 
 was decided at the October Term 1929, we do not deem it necessary to discuss the claim that the 14th Amendment implemented any or all of the original amendments. However, we assume for the purpose of this case that such amendments were so implemented.
 

 Suffice it to point out that on the question of due process, the procedural requirements of our state Constitution in cases pending in the state courts are as broad as the procedural requirements under the federal Constitution for cases pending in the federal courts. See,
 
 inter alia,
 
 Article I, Section 10, Constitution of Ohio.
 

 In the case of
 
 State, ex rel. Warner,
 
 v.
 
 Baer et al., Judges, supra,
 
 it was held in paragraph two of the syllabus:
 

 ‘ ‘ Sections 5 and 10 of the Ohio Bill of Rights confer upon persons accused of crime a right of trial by jury, but this right may be waived, and. accused persons may, with the approval of the court, consent to be tried by a jury composed of less than twelve men.”
 

 In paragraph four of that syllabus it was held:
 

 ‘ ‘ Agreements, waivers and stipulations made by persons accused of crimes, or by their counsel in their presence, during the course of a trial for crime, are, after the termination of the trial, as binding and enforceable upon such persons as like agreements, waivers and stipulations are upon parties to civil actions.”
 

 We are of the opinion from an examination of the entire record that appellant "had an intelligent understanding of the effect of the withdrawal of his plea of not guilty of first degree murder while attempting to perpetrate robbery. The record leaves no doubt in our minds that this defendant understood the meaning of murder and robbery and that the decision to waive a jury trial was arrived at after much deliberation not
 
 *92
 
 only by appellant but by his attorney and family, as well as with the co-operation of the attorney for the joint defendant.
 

 The inconsistency of appellant’s present claim that if further explanation had been given appellant would have chosen a jury trial is demonstrated by the argument of his counsel on the motion to withdraw the plea of guilty wherein he stated that such decision to waive a jury and plead guilty was arrived at after careful consideration by appellant and his parents.
 

 Therefore, appellant’s first assignment of error should be and hereby is overruled.
 

 Appellant’s second assignment of error is as follows:
 

 “That the court committed error prejudicial to defendant-appellant, then a minor sixteen (16) years of age, in permitting him to enter his ‘Waiver of Trial by Jury’ and consent to trial by court, without fully and properly apprising defendant-appellant of the nature and legal significance of his said act, without securing an express and intelligent consent of defendant-appellant, and without fully advising defendant-appellant of all of his constitutional rights in the premises. ’ ’
 

 This assignment of error is overruled for the reasons given above for the overruling of the first assignment of error.
 

 Appellant’s third assignment of error grows out of the proceedings of March 7 wherein appellant sought: (1) New trial after plea of guilty and sentence; (2) demand to withdraw former plea of guilty after the pronouncement of sentence; (3) demand to withdraw waiver of trial by jury after the pronouncement of sentence; and (4) charge of bias and prejudice based upon provoked reprimand of counsel.
 

 This assignment is as follows:
 

 “That the court committed error prejudicial to de
 
 *93
 
 fendant-appellant in that one member of the trial court, composed of three judges of the Court of Common Pleas, was biased and prejudiced as to defendant-appellant, thus denying to defendant-appellant that ‘due process of law’ as guaranteed by the Constitution of the United States and of the State of Ohio; and further, that said member of the trial court was, during the hearing of defendant-appellant’s motion for new trial, biased and prejudiced as against this defendant-appellant and his legal counsel of his own choosing, and so upbraided, castigated, verbally abused, maligned and threatened said counsel in open court, so as to shut off and prevent said counsel from introducing further evidence and conducting said hearing in an orderly manner and as desired, and thereby denied to this defendant-appellant the right to be heard and the right to be represented by counsel of his own choosing, — and thereby denying to defendant-appellant said ‘ due process of law.’ ”
 

 We shall divide our discussion of this assignment of error into two parts: (1) The proceedings up to and including the pronouncement of sentence; and (2) that
 
 part
 
 of the record occurring subsequent to the pronouncement of sentence.
 

 As to part (1): We have searched the record of such proceedings carefully and find no error prejudicial in the slightest to appellant. Indeed, the injunction of Section 13442-2, General Code, was disregarded in favor of the appellant. This section provides:
 

 “It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters with a view to expeditious and effective ascertainment of the truth regarding the matters in issue.”
 

 As to part (2), the proceedings of March 7 (one week after the pronouncement of sentence): Nothing
 
 *94
 
 occurring therein may be said to be prejudicial to appellant.
 

 Where a defendant pleads guilty there is no warrant in law for a motion for new trial. While a review may be had of a three-judge determination of the degree of a crime, no such review was sought and no question is raised as to such deteiunination.
 

 As said by Judge Davis in
 
 Conrad
 
 v. State, 75 Ohio St., 52, 66, 78 N. E., 957: "His plea of guilty conclusively establishes every essential fact in the case against him, and leaves open only the question as to the degree of the crime.”
 

 At the opening of the hearing before the three-judge court, the following took place:
 

 "Mr. Beard: On behalf of defendant Donald E. Frohner we would like to enter a plea of guilty to the indictment and ask the court for an opportunity to offer evidence in mitigation on the question of mercy being recommended by the court.”
 

 In his opening statement appellant’s counsel said: "Now, men, we have here a terrible situation; with what Mr. Ambrose [prosecutor] had to say our evidence will not be in conflict. We have entered a plea of guilty in that respect * * * ’ ’
 

 Near the close of the trial Judge Jenkins said:
 

 "We would like to ask defendant Frohner if he has anything further to volunteer, either himself or through witnesses or have him go on the stand to do so. ’ ’ Whereupon Frohner resumed the stand and was asked by his counsel: "You heard what the court had to say about if there is anything further you want to say relative to this thing that might be of interest to these men in deciding whether or not they are going to grant you mercy. You don’t have to say anything. If there is anything in addition we haven’t brought out — ”
 

 
 *95
 
 From the opening to the closing of appellant’s trial, the only contention that was made oh behalf of appellant was that the court should extend mercy. Both in the motion for new trial filed March 1,1947, and in the amended motion for new trial filed March 3, 1947, the grounds set forth for new trial boil down to what is denominated as the third ground in both the original and amended motions, to wit: “3. That under the evidence adduced the facts as shown and all circumstances surrounding defendant Frohner, the judgment of the court should have been life imprisonment for this defendant and not the death penalty. ’ ’
 

 In the amended motion two grounds were added which challenged the constitutionality of the procedure in respect of the waiver of trial by jury, the propriety of the three-judge court and the alleged disregard of the provisions of the federal Constitution, each of which we have di-scussed at other points and' all of which we hold are without merit.
 

 On February 11, 1947, appellant filed the following-signed waiver of jury, to wit:
 

 “State of Ohio, v. “Waiver of Jury “Donald Frohner and Arthur Chapman, Defendants.
 

 “I, Donald Frohner, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a judge of the court in which the said cause may be pending or by judges chosen and selected as provided for by statute. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury.
 

 “[signed] Donald Frohner
 

 “Donald Frohner, Defendant.”
 

 To get a proper background for an understanding of what may be taken as impatience on the part of Judge
 
 *96
 
 Jenkins at the March 7 hearing, attention is called to the fact that on March 5, Frohner’s attorney filed the affidavits of Frohner and himself as well as the demand of right and privilege to withdraw former plea of guilty and right to withdraw waiver of trial by jury. At the opening of the March'7 hearing Judge Jenkins stated that he had the originals of the affidavits.
 

 Both of such affidavits allege as facts matters which were contrary to what appellant and his counsel had led the court to believe when appellant was allowed to waive his right to a jury, to withdraw his plea of not guilty and to enter a plea of guilty. These affidavits, filed and offered by appellant’s counsel, amounted to a stultification of such counsel and justified the so-called castigation.
 

 In his affidavit, such counsel says in substance that he had not explained to his client the effect of the steps taken from the waiver of the right of trial by jury to withdrawal of the plea of not guilty and the entering of a plea of guilty and “that said minor defendant, in the opinion of the affiant signed said- waiver of jury as a matter of expedience only. ’ ’
 

 In the affidavit of counsel for appellant we find the following:
 

 “* * * that said Donald Frohner is a minor sixteen years of age, who has no comprehension or understanding as to the provisions of the United States Constitution or the Constitution of the State of Ohio relative to his right and guaranteed privilege of having a jury trial in the instant case.”
 

 The record shows that in open court in the presence of counsel of his own choosing, after reading the waiver of right to trial by jury and having the same read to him by the court, the following appears:
 

 “I fully understand that under the law of this state I have a constitutional right to a trial by jury.”
 

 
 *97
 
 The record further shows that the court said to him at the time of the signing of such waiver: “Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by defendant at any time before the commencement of the trial. Now, that being the law and you having read this waiver, do you desire to sign it?”
 

 After further explanation of defendants’ rights, appellant was again asked if he desired to sign the waiver and answered ‘ ‘ yes. ’ ’
 

 We are satisfied from the record that appellant was fully cognizant of his rights and understood fully what he did and what was being done on his behalf by his counsel.
 

 Notwithstanding that appellant in his affidavit filed by counsel of his own choosing says: “Affiant further says that at no time, either by reason of advice from his counsel or from advice by the Court of Common Pleas, did he ever understand or have an appreciation of the fact that a trial by jury was guaranteed to him under the Constitution of the State of Ohio and under the Constitution of the United States; and that the provisions of said Constitution were never at any time either read to him or explained to him other than in a general way; but that in truth and in fact, affiant signed said waiver of jury, acting upon what he believed to be expediency.”
 

 Counsel’s affidavit further states:
 

 “* * * On February 3, 1947, a meeting was held in the chambers of the Honorable David G. Jenkins, who was assigned to the criminal bench for the present term of court, in which affiant was informed to make a decision as to whether or not a jury trial was to be had in the instant case and let the court know by the following Friday; that the affiant discussed with the par
 
 *98
 
 ents of this defendant and the defendant himself the advisability of submitting the instant ease to a jury of twelve persons or a court comprised of three local judges; the backgrounds, experience and families of each of the four members of the Court of Common Pleas of Mahoning county were explained to the parents of said minor defendant and the defendant himself ; * * * that as a result of this hysteria, publicity of the press and radio
 
 it ivas decided by the minor defendant herein
 
 that his only chance for a fair and impartial trial would be by the three-judge tribunal, and as a result of said decision the waiver of a jury trial was signed as the only expedient thing to do under the circumstances.” (Emphasis added.)
 

 These were shocking statements to be made by the counsel for a defendant in a murder trial, who was claiming that his client at the time of trial was not then sane, that in effect he had failed in his duty as appellant’s counsel and had even acted upon the decision of his minor client that the waiver of a jury trial was the only expedient thing to do under the circumstances.
 

 If the foregoing were not sufficient to deserve criticism then consider the following statement in counsel’s affidavit:
 

 “* * * that said minor defendant, in the opinion of the affiant signed said waiver of jury as a matter of expediency only as hereinabove set forth without fully understanding and completely comprehending his constitutional rights or the gravity and importance of reaching this decision in his own mind without any influence or suggestion caused by a falsely wrought-up public opinion. ’ ’
 

 Just what was the purpose of the following statement — what inference, if any, was sought to be suggested? :
 

 “This affiant further says that he never explicitly
 
 *99
 
 read the provisions of the United States Constitution or the Constitution of the State of Ohio relative to guaranteeing the right of trial by jury to this defendant, and that said provisions were never read to said minor defendant by the court.”
 

 Under the record in this case the court below was justified in disbelieving and disregarding such affidavits and justified also in reprimanding counsel. Counsel was not prevented from introducing further evidence or from conducting the hearing in an orderly manner.
 

 When appellant (accompanied by counsel of his own choosing) signed the waiver of a trial by jury a man-. datory duty was placed upon the court to accept such waiver (subject to withdrawal before hearing) unless it was brought to the attention of the court that the defendant was not then sane.
 

 In the case of
 
 State
 
 v.
 
 Smith,
 
 123 Ohio St., 237, 174 N. E., 768, we held:
 

 “Upon the arraignment and plea of an accused, the provisions of Sections 13442-4 and 13442-5, General Code (113 O. L., 179), giving him the right to waive a jury and an election to be tried by the court, are mandatory; and the court has no power to reject the accused’s waiver, unless suggestion of his present insanity is made by counsel for the accused or unless it otherwise comes to the notice of the court that the accused is not then sane, in conformity with the provisions of Section 13441-1, General Code (113 O. L., 177).”
 

 The conrt had the right to be aroused and indignant when a member of the bar said in substance that when we (counsel and defendant) waived the right of trial by jury, when we withdrew plea of not guilty and entered a plea of guilty and elected to be tried by a court of three judges, we had our fingers crossed — we were just gambling, “it was the expedient thing to do,” and
 
 *100
 
 when you failed to give us what we wanted, to wit, the extension of mercy, we now have the right to try some other means to secure such recommendation.
 

 We must keep in mind that there is a distinction between the extension of mercy by a court and the exercise of clemency by the administrative branch of the government. The action of the court is based upon the record made in the case, that is, the evidence. Such extension of mercy rests in the discretion of the court. While this matter of discretion is not reviewable, we have nevertheless in view of the claim of lack of due process, reviewed same and find no abuse thereof. Appellant was not only the planner and .leader but it was he who twice shot and thereby killed William C. Spieth. Two of the judges extended mercy to Chapman who was referred to in the record as the “weak sister.” Judge Jenkins did not join in the granting of mercy to Chapman. If the matter of the extension of mercy to Chapman had been brought here by the state we could not entertain the same. We do find that the record shows facts upon which the three-judge court might properly discriminate between the two defendants in extending mercy.
 

 In the case of
 
 Howell
 
 v.
 
 State,
 
 102 Ohio St., 411, 131 N. E., 706, it was held:
 

 “1. Section 12400, General Code, giving the jury discretion to recommend mercy in cases of conviction of first degree murder, confers an absolute discretion which should not be influenced by the court. However, this discretion should be exercised in view of all the facts and circumstances disclosed by the evidence.
 

 “2. Under his oath in the trial of capital offenses, the juror is required to make true deliverance between the state and the accused. This requires not only his determination whether the accused is guilty of first degree murder, but whether a recommendation of mer
 
 *101
 
 cy should be made. Both questions should be determined from the knowledge the juror acquires as a juror and from the facts and circumstances developed or undeveloped by the evidence.
 

 “3. In such a case it is not error for the court, in its charge, to say to the jury that it was their duty ‘to consider and- determine whether or not, in view of all the circumstances and facts leading up to, and attending the alleged homicide as disclosed by the evidence,’ they should or should not make such recommendation.
 

 “4. In such a case, it is not error for the trial court to permit counsel for the state to argue that a recommendation for mercy should be withheld.
 
 (Shelton
 
 v.
 
 State, ante,
 
 376, followed.) ”
 

 In discussing the question of the extension of mercy in a murder case Mr. Justice Frankfurter said in his concurring opinion in
 
 Andres
 
 v.
 
 United States,
 
 No. 431, October term 1947, decided April 26, 1948: “Three of the nine States — Ohio, Oregon, and South Carolina— have statutes providing that the penalty is death unless the jury recommends ‘mercy’ or ‘life imprisonment’ in which case the punishment shall be life imprisonment. These have all been construed as providing for alternative punishment in the discretion of the jury. ’ ’
 

 At the March 7 hearing appellant by his counsel demanded the right to withdraw appellant’s former plea of guilty and to withdraw also appellant’s waiver of the right to trial by jury. Permission to withdraw a plea of guilty rests within the sound discretion of the court. Certainly under the record in this case it would be a gross abuse of discretion to permit the withdrawal of the plea of guilty after the hearing and the pronouncement of sentence.
 

 The right to withdraw the waiver of trial by jury is regulated by statute. Section 13442-4, General Code,
 
 supra,
 
 provides that such waiver may be withdrawn at
 
 *102
 
 any time before
 
 the
 
 commencement of the trial. We hold that such waiver may not be withdrawn unless application therefor is made prior to the commencement of the trial.
 

 On the claim of bias or prejudice of Judge Jenkins, Section 1687, General Code, provides:
 

 “When a judge of the Common Pleas Court or of the Superior Court of Cincinnati is interested in a cause or matter pending before the court in a county of his district, or is related to, or has a bias or prejudice, either for or against, a party to such matter or cause, or to his counsel or is otherwise disqualified to sit in such cause or matter, on the filing of an affidavit of any party to such cause, or matter, or of the counsel of any party, setting forth the fact of such interest, bias, prejudice or disqualification, the clerk of the court shall enter the fact of the filing of such affidavit on the trial docket in such cause and forthwith notify the Chief Justice of the Supreme Court, who shall designate and assign some other judge to take his place. Thereupon the judge so assigned shall proceed and try such matter or cause. The affidavit herein referred to shall be filed not less than three days prior to the time set for the hearing in such matter or cause. ’ ’
 

 Approximately three weeks elapsed between the alleged publication (February 4) and the time set for the hearing (February 24).
 

 On the claimed inability to get a fair and impartial trial let us look at the procedure provided by law. Section 13427-1, General Code, provides:
 

 “If it appear to the court, by affidavit or evidence in open court, that a fair and impartial trial cannot be had in the county where a cause is pending, such court shall order that the accused be tried in any county of the state; and thereupon the clerk of the court of the county in which the cause is pending shall make a cer
 
 *103
 
 tified transcript of the proceedings in the case, which, with the orignal indictment or information, he shall transmit to the clerk of the court of the county to which said case is sent for trial, and the trial shall be conducted as if the cause had originated in the latter county. The prosecuting attorney of the county in which the cause originated shall take charge of and try said cause, and the court to which said cause is sent may on application appoint one or more attorneys to assist the prosecuting attorney in such trial, and allow such attorney such compensation as it deems reasonable. ’ ’
 

 No action of any kind was taken under either of the preceding statutes. Our records show that Frohner’s counsel was not a novice in the practice of law. As said by the court below in passing upon appellant’s motions: “These lawyers were able lawyers, they calculated carefully the tribunal they had to confront.”
 

 In appellant’s brief reference is made to an alleged article which appeared in the Youngstown Vindicator quoting Judge Jenkins to the effect that the youth of this country today are a menace to society. This newspaper article does not appear in the record. The brief contains the further statement that appellant’s counsel in company with Mr. Haynes, discussed .this article with Judge Jenkins in chambers and that Judge Jenkins had said that he had been misquoted, that he had children of his own, that he did not feel in his own mind as had been stated in the newspaper. After the degree of the crime had been determined and sentence passed, defendant Frohner’s counsel, Mr. Beard, attempted to place into the record his version of what was said respecting such matter. It was then that a colloquy between Mr. Beard and Judge Jenkins took place.
 

 During this proceeding of March 7, Mr. Beard said:
 

 £ £ May it please the court, at this time I would like to
 
 *104
 
 offer into evidence the affidavits and demand which were filed in this matter, and I have copies of them here which I will be glad to give to you gentlemen, the members of the court.
 

 “Judge Jenkins: I have the originals.
 

 “Mr. Beard: I would like the record to show that the affidavit of Chester C. Beard, attorney for the defendant Donald Frohner, in support of the motion for new trial and application for rehearing, * * * marked Defendant Frohner’s Exhibit 8; and demand and right of privilege to withdraw former plea of guilty and right to withdraw waiver of trial by jury, signed by the defendant Donald Frohner and marked Defendant Frohner ’s Exhibit 9.” Mr. Beard then made an argument on his motions, covering 32 pages.of the record. During such argument no claim was made that appellant was not guilty or that the degree had not properly been determined. Mr. Beard was complaining because mercy had not been extended as he had led appellant’s parents to believe would be done. There was no inconsisttency on Judge Jenkins’ part. The record shows that he had not joined in the extension of mercy for Chapman. It was during this proceeding that counsel for appellant Frohner made statements that were challenged by „Judge Jenkins. Mr. Beard’s statements were not any part of the record prior to the pronouncement of sentence and are not entirely consistent with Mr. Beard’s own statement made to the court upon the withdrawal of the plea of guilty and the waiver of a jury trial. The court permitted its rulings on such motions and the arguments to be made parts of the hill of exceptions.
 

 It is the duty of the trial courts of this state to keep the record straight. A trial court should not permit a record which twists in the slightest or colors in the slightest or omits what occurred. It is the duty of the
 
 *105
 
 trial court to see that the bill of exceptions is full and not to sign such bill unless it is both complete and correct. Here appellant’s counsel, after the hearing was over, was attempting to put his version of the conversation with Judge Jenkins into the record. (No inference is to be drawn that this court is not always ready to investigate a charge of bias or prejudice when timely presented.) Had the court sat idly by and allowed this to be done there might have been a misleading record. Instead of waiting and refusing to sign the bill of exceptions, Judge Jenkins stopped Mr. Beard with the warning that Mr. Beard was not truthfully relating what had occurred.
 

 Judge Jenkins properly directed counsel to stay within the record and to address the entire court of three judges rather than to direct his remarks to Judge Jenkins alone. After the reprimand of appellant’s counsel he was permitted to proceed. His argument after the reprimand is contained in 32 pages of the bill of exceptions all of which, he being an attorney, was received as under oath.
 

 The record shows that after appellant’s counsel had finished their arguments on their motions for new trial, et cetera, Judge Jenkins said:
 

 “We feel th$t anyone who wants to be heard, authorized to speak, can do so at this time.”
 

 Here again was a direct and specific invitation made at the close of the proceedings of March 7 (where counsel claim that they were shut off).
 

 Mr. Beard responded: “We don’t have anything further.” This portion of the record will be repeated at a later point.
 

 How can anyone familiar with this record honestly say that appellant’s counsel was shut off and prevented from producing further evidence or argument?
 

 Attention is called also to the fact that throughout
 
 *106
 
 the main case appellant’s counsel had so asked long-questions that they might be answered by “yes” or “no.” Appellant’s counsel was not stopped but Judge Jenkins did at one point ask kihx: “Pardon me, are you going to tell him something or ask him something?” That same question would be appropriate on many pages of the bill of exceptions.
 

 At another point Judge Jenkiixs asked Mr. Beax-d: “Aren’t you leading your witness a little too much, please. ’ ’
 

 At another point Judge Jenkiixs said in respect of radio programs: “I am afraid it wouldn’t mean anything to us, but we will listen to them anyway.”
 

 When questioxxixxg wexxt too far into the domestic life of appellaxit’s parents the prosecutor did object but this objection was overruled and Judge Jenkins said: “The court is perfectly well aware of what it has to detex-xnine up here and these objectioxxs are more to the weight than the competency of the matter, so we think after what counsel has just said he xnay go ahead and detail the whole life.”
 

 The procedure followed by appellant’s counsel is indicated by his statement: “The bars ax-e down.”
 

 After Chapman’s evidexxce had been offered, appellant’s mother was again called to the stand by Mr. Beard who asked: “Is this taking too long, Your Honor?” Judge Jenkins replied: “You take your time, whatever you think is important.” Still later, whexx his counsel had excused Mrs. Frohner as a witness, Judge Jenkins said: “We would like to ask defendant Frohner if he has axxything further to volunteer, either himself or through witnesses or have him go on the stand to do'so.” Whereupon Frohner resumed the witness stand and was asked by his counsel: “Q. You heard what the court had to say about if there is anything- further you want to say relative to
 
 *107
 
 this thing that might be of interest to these men in deciding whether or not they are going to grant you mercy. You don’t have to say anything. If there is anything in addition we haven’t brought out — A. No, sir; I would like to say that truthfully I don’t know how a father would act, I never had one.
 

 “Judge Jenkins: We are interested in your own acts, and your own mind and the circumstances of this crime you engaged in. That is what we are interested in. Have you anything to say with respect to that that might clear up anything you think has not been made clear here? It is your actions that are on trial and not your father’s.”
 

 Appellant’s counsel doubt that the record sustains their claim of disqualification and prejudice on the part of Judge Jenkins for they say in their brief:
 

 “Assuming that this court should conclude that there is not sufficient evidence in the record to show disqualification and prejudice on the part of the Judge, we insist that this insufficiency is due to the fact that the accused was not permitted to introduce further evidence upon that subject, and that the court erred in excluding further evidence.”
 

 The record does not bear out such claim. No further evidence was offered and no further motion or application was made notwithstanding Judge Jenkins made the following announcement after the alleged “castigation” of appellant’s counsel:
 

 “Judge Jenkins: We feel anyone who wants to be heard, authorized to speak, can do so at this time.”
 

 Appellant’s counsel responded: “We don’t have anything further. I would like to have the record to show, however, the defendant is here in court with his father and mother and are available for any questions if the court desires to ask them.
 

 “Judge Jenkins: This is a hearing on your motion
 
 *108
 
 and not ours. Gentlemen, the court desires to know if there is anything further? Is the court to consider this matter submitted on these motions and the record?
 

 “Mr. Beard: Yes, Your Honor.”
 

 At another point in the record upon objection being raised by the prosecutor to Mr. Beard’s questioning, Judge Jenkins said: “I don’t know where the limit is, I don’t know what you are trying to do so go ahead because of course if it doesn’t have any bearing we are simply wasting our time.”
 

 While there is a claim in appellant’s brief that Frohner was among the youths referred to by Judge Jenkins in the alleged newspaper article, we find no support for such statement in the record. The record discloses no bias or prejudice on the part of any member of the three-judge court against Frohner or Chapman. The colloquy taking place after the conclusion of the bearing and the sentencing of defendant does not indicate any prejudice against appellant. In protecting the record, the judge was only discharging his duty. What Judge Jenkins is alleged to have said to the newspapers occurred three weeks prior to the trial or hearing before the three-judge court and there was ample time prior to the hearing before the three judges to have had that matter determined by the Chief Justice of this court under Section 1687, General Code.
 

 That the court did not exclude further evidence is clearly shown by the record of what was done and what was said. No further evidence was offered and no further motion or application was made notwithstanding the. court made the following announcement at the close of the proceedings of March 7, and after the alleged “castigation” of appellant’s counsel:
 

 “Judge Jenkins: We feel that anyone who wants to be heard, authorized to speak, can do so at this time.
 

 
 *109
 
 “Judge Barnuxn: 1 know of no one else who wishes to speak on behalf of defendant.
 

 “Judge Jenkins: Have you anything, Mr. Ambrose?
 

 “Mr. Ambrose: I have nothing further, Your Honor.
 

 “Judge Jenkins: Is counsel, the only counsel of. record in this case, Mr. Beard, is he about?
 

 “(Mr. Beard enters court room)
 

 “Judge Jenkins: As I said before, if there is anything further that anyone authorized to do so desires to say to the court we are here to hear it.
 

 “Mr. Beard: We don’t have anything further. I would like to have the record to show, however, the defendant is here in court with his father and mother and are available for any questions if the court desires to ask them.
 

 “Judge Jenkins: This is a hearing on your motion! and not ours. Gentlemen, the court desires to know if there is anything further? Is the court to consider this matter submitted on these motions and the record?
 

 “Mr. Beard: Yes, Your Honor.
 

 “Judge Jenkins: We declare a recess in order to consider this matter.”
 

 The foregoing motions were denied by the court in the following language:
 

 “We deny this motion, we deny both motions, and we say, however, that the plea made to us should properly be made .to the executive branch of this government, not to the judiciary. The judiciary has simply done its simple and plain duty. If there is to be any pity or mercy shown tell it to the Governor or to the Board of Pardon and Parole; that is the place to go.
 

 ‘ ‘ That is the decision of this court. ’ ’
 

 The bill of exceptions contains the following entry;
 

 “And thirty days from the overruling of said denominated motion for a new trial and said motion
 
 *110
 
 for rehearing having been given the defendant in which to prepare, have allowed, signed and sealed this bill of exceptions and have the same entered upon the journal of said court.”
 

 No support for the claim that appellant’s counsel was shut off and prevented from introducing further evidence and conducting said hearing in an orderly manner as desired, will be found in the record. It is not to be lost sight of that there were three judges, each of whom took an active part in the proceedings. There was no proffer of any further affidavit or testimony and if there had been and Judge Jenkins had attempted to suppress same, an appeal to the other judges would most surely have resulted in a ruling which would appear in the record.
 

 The record does not sustain any of the charges made in such third assignment of error. This assignment of error raises the question whether an attorney, after an unfavorable verdict has been announced, may, by misconduct, build up a record on which to predicate error.
 

 While this matter was presented to us in such a way as to raise questions in our minds, yet a study of the bill of exceptions will disclose that no prejudice or bias was shown and that appellant was accorded due process of law. While there is no provision for a motion for a new trial in a case like this, we will, out of caution and for the purpose of assuring that due process was observed, assume that a motion for new trial might be made. Assuming such motion to have been made properly, it was not error for the court below to overrule same.
 

 The determining of the degree of the crime and the extension of mercy are jury functions, the former of which is reviewable while the latter is not.
 

 Whether the trial court properly determined the
 
 *111
 
 degree of the crime is to be determined from the record as made at the hearing rather than upon a record made* after new trial.
 

 The third assignment of error is, therefore, overruled.
 

 Appellant’s fourth assignment or error reads as-follows:
 

 “Fourth: That the court committed error prejudicial to defendant-appellant, in that during the trial before the Court of Common Pleas, composed of three judges of the Court of Common Pleas, it was shown or suggested by the evidence adduced that defendant-appellant was not then sane, and the court failed and neglected to carry out the provisions of Section 13441-1 of the General Code of Ohio, by failing and neglecting to proceed forthwith to examine into the question of the sanity or insanity of defendant-appellant as required by law.”
 

 The record does not bear out the factual statement that “it was shown or suggested by the evidence adduced that defendant-appellant was not then sane.”
 

 The affidavit of appellant submitted by his counsel in support of the alleged motion for new trial is another instance of inconsistency. Counsel would have us believe in face of the record and in the absence of any suggestion from counsel that the lower court should have observed that appellant was not then sane. Yet after the trial is over counsel ask us to believe appellant’s affidavit which has been referred to in the preceding assignment of error.
 

 The record discloses and appellant’s brief sets out that a hearing was had in the Juvenile Court under Section 1639-32, General Code, which provides as follows:
 

 “In any case involving a delinquent child under the provisions of this chapter who has committed an act
 
 *112
 
 which would he a felony if committed by an adult, the judge
 
 after full investigation and after a mental and physical examination
 
 of such child has been made by the Bureau of Juvenile Research, or by some other public or private agency, or by a person or persons, qualified to make such examination, may order that such child enter into a recognizance with good and sufficient surety subject to the approval of the judge, for his appearance before the Court of Common Pleas at the next term thereof, for such disposition as the Court of Common Pleas is authorized to make for a like act committed by an adult; or the judge may exercise the other powers conferred in this chapter in disposing of such case.” (Italics ours.)
 

 Section 1639-1, General Code, defines the word, “child,” as including any child under eighteen years of age.
 

 Section 1639-2, General Code, defines a “delinquent child,”
 
 inter alia,
 
 as follows:
 

 “1. Who violates any law of this state, the United States, or any ordinance or regulation of a subdivision of the state.”
 

 In appellant’s brief it is said:
 

 “The Juvenile Court considered for a period of over two weeks, the recommendation of counsel that juvenile problems were presented and the Juvenile Court should retain jurisdiction over the boys. This recommendation was refused and both boys were turned over to the Common Pleas Court of Mahoning County.”
 

 The Juvenile Court, after full investigation and mental and physical examinations found that the defendants were proper subjects to be bound over to answer as adults for their crime. Appellant’s attorney made no suggestion to the court that appellant was not then sane. The record does not disclose
 
 *113
 
 that it came to the notice of the court that appellant was not then sane. The three judges observed appellant and each participated in interrogating him. There is no suggestion in the record that appellant did not know right from wrong or that he did not have the ability to choose the right and leave the wrong alone. Indeed, the record shows that counsel for appellant endeavored to impress the court with his client’s ability to choose the right and abjure the wrong. In the report of Dr. Eugene E. Elder, it is said under the heading of mental status:
 

 “Patient -is fairly clean, co-operative and does not resist examination. His conversation is coherent. He knows he is charged with murder and he is able to give a good description of past happenings. He stated that he planned to steal an automobile with Mr. Chapman, a school chum, and they discussed this last Sunday- afternoon * ® *'
 

 ‘ ‘ He was able to answer all the intellectual questions and mathematical problems asked. When he was asked to differ between a lie and mistake he states a lie is ‘made with will.’ ”
 

 In Dr. Elder’s summary it is said:
 

 “This patient does not show any positive mental symptoms, except for some possible paranoid trend in his conversation when he states that ‘lots of people in the school are my enemies.’ ”
 

 In the psychological report it is said:
 

 . “This indicates that Donald has good average intelligence, with some superiority of performance ability over verbal ability. * * *
 

 “Significant were two additional answers: ‘What should you do if you find an envelope in the street that is sealed and addressed, and has a new stamp?’ He replied, ‘Mail it — if you want to be honest.’ ‘Why should we keep away from bad company? ’ He replied, ‘To keep out of trouble with the law.’ ”
 

 
 *114
 
 At the hearing appellant’s counsel struggled vainly to get some favorable testimony on client’s lack of sanity. When Dr. Elder was on the stand appellant’s counsel asked:
 

 ‘ ‘ All you did was send a letter to Judge Beckenbach setting forth what your findings were. From your one single examination of this man did you find at least some tendencies present which would indicate some psychosis to be there? A. Not the definite psychosis.”
 

 When Mrs. Baker was on the stand, appellant’s counsel asked her:
 

 “After pursuing that examination you reached the conclusion as follows: ‘There is almost complete emotional suppression, and there is a total lack of constructive creative thinking. The Rorschach suggests beginning psychosis,’ is that correct? A. Yes, sir.
 

 “Q. When you say ‘beginning psychosis’ what do you mean?
 

 “A. There are suggestions that this boy is in a pre-psychotic condition, it may represent an early stage of mental illness which will continue possibly to develop into a full-blown mental illness.”
 

 These experts clearly indicated that there was no present psychosis although they did say that there was
 
 suggested a possibility
 
 that mental illness
 
 might
 
 develop.
 

 That appellant knew the difference between right and wrong and was able to choose the’right and abjure the wrong is shown by the questions asked of him by his own counsel and his answers thereto,
 
 e.
 
 g.:
 

 “At the present time in the presence of this court do you realize what you did is absolutely wrong and are you honestly sorry and wish their forgiveness for what you have done? A. Yes, sir.
 

 “Judge Jenkins: While you were doing it did you realize it was wrong? A. No, sir; I lost my head completely.
 

 
 *115
 
 “Judge Jenkins: You mean when the planning of this kidnaping was from day to day discussed as you say with Chapman you had no realization that was wrong or that the taking of a car to effect that purpose was wrong or the taking of a revolver which you yourself loaded was wrong, are you telling us that?
 

 “Mr. Beard: I think he misunderstood you.
 

 “A. I think that was wrong.
 

 “Judge Jenkins: I beg your pardon. A. Yes, sir, I think that was wrong.
 

 “Judge Jenkins: You realized all the time what you were doing in this crime was wrong? A. Yes, sir.
 

 “Q. When you answered the court you didn’t realize what you were doing at the time and didn’t know it was wrong what were you referring to, the actual shooting, is that what you mean? A. Yes, sir.
 

 “Q. Previous to that time when you and Arthur discussed this matter and laid these plans and all that sort of thing you at that time realized that it was something wrong you were about to do? Is that right? A. Yes, sir.”
 

 In making the engagement with the boy who was ■to be kidnaped, Frohner told him: “Don’t tell anybody I am going to meet you, I may have to skip town. ’ ’
 

 Appellant’s attorney asked the following question and received the answer as indicated:
 

 “Q. Since you have been arrested and had occasion to be in jail and think about this thing, you certainly know it was the wrong and improper thing to do, and you would never have a chance of doing anything like that, don’t you? A. Yes, sir, I know that now.”
 

 Late in the hearing Frohner was recalled and the following,
 
 inter alia,
 
 took place:
 

 “Judge Jenkins: When you pulled that revolver on that man into whose ear you had gotten through his kindness for the purpose of taking that car from him,
 
 *116
 
 when you pulled that gun to use and to take the car away from him did you then realize that was a wrong thing to do? A. No, sir, I didn’t.
 

 “Judge Jenkins: You didn’t? A. No, sir; nothing of that sort came in my mind.
 

 “Judge Jenkins: That is, the thought what you were doing, whether right or wrong, didn’t enter your mind? A. No, sir; I wasn’t thinking much about that, my mind was blank except to recall the holding of the gun.
 

 “Judge Jenkins: I didn’t ask that — you are talking about the instant in which you pulled the trigger? A. Yes, sir.
 

 “Judge Jenkins: I am not asking you about that.
 

 ‘ ‘ Whereupon the previous question read by reporter.
 

 “Judge Jenkins: I say when you pulled the gun out of your pocket or out of the briefcase or wherever it was. A. I wasn’t thinking of anything.
 

 “Judge Jenkins: You weren’t thinking of anything? A. No, sir.
 

 “Judge Doyle: You took the gun and loaded it before you got into this car, as I understand it, and you were somewhere around Canfield when you did that, wherever it was then; was there anything at all in your mind then you were starting on something that might result in the loss of someone’s life and it would be the wrong thing for you to do? A. I realized it ■ was the wrong thing to do but I didn’t think anyone was losing their life.
 

 “Judge Doyle: I didn’t hear.
 

 “Mr. Beard: He said, it would be the wrong thing to do but he didn’t think anybody would lose their life.
 

 “Judge Jenkins: Did you think you had a popgun with you? A. No, sir.
 

 “Judge Jenkins: You knew it was a deadly weapon. A. Yes, sir.
 

 
 *117
 
 “Judge Jenkins: You had loaded it yourself? A. Yes, sir.
 

 “Judge Doyle: Is there anything else you want to' tell us that bears on this? A. No, sir.”
 

 We can find nothing in the record, and we have searched diligently, which suggests that appellant did not know right from wrong and did not have the ability to choose the right and abjure the wrong in respect of the crime he committed. Under the facts and circumstances disclosed by the record in this case, •we are of the opinion that appellant’s fourth assignment of error should, be and hereby is overruled.
 

 The fifth assignment of error is: “ Other errors apparent upon the record and prejudicial to the rights ' of defendant-appellant.”
 

 We have found no errors of any kind prejudicial to the rights of appellant.
 

 All that was sought in this case below was an extension of mercy. In an effort to sustain such request the family life of appellant’s parents was gone into. We may and do accept every word of evidence offered in behalf of appellant without question but we find no abuse of discretion by the court below in the failure of such court to extend mercy to this appellant. True, he is young, but true also is the fact that he was guilty of a cold-blooded, heinous offense. Appellant’s counsel calls this crime fantastic yet the record before us shows conclusively that if Chapman had been able to start the murdered man’s automobile before the bus came by, another terrible crime planned by appellant would probably have been committed by nightfall.
 

 While not controlling, it is to be noted that while mercy was extended to Chapman by the two judges other than Judge Jenkins the same two judges other than Judge Jenkins did not extend mercy to appellant. In other'words, leaving Judge Jenkins out altogether, the result would be the same.
 

 
 *118
 
 Whether Chapman deserved the mercy he received is not before us and cannot come before us. The record doe's contain evidence which, if believed, as it evidently was by two of the judges, differentiates his case from that of appellant in respect of the extension of mercy.
 

 Therefore, the judgment of the Court of Appeals should be, and hereby is, affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias, Zimmerman, Sohngen and Stewart, JJ., concur.
 

 Hart, J., dissents.