Jones, J.
Appellant alleges, as follows, three errors by the Common Pleas Court in its judgment convicting him of murder in the first degree:
1. Admitting the confession of the appellant.
2. Failing to find the appellant not guilty by reason of insanity.
3. The verdict was not supported by sufficient evidence.
Appellant claims that the confession was inadmissible because the circumstances under which it was taken constituted a violation of the due-process clause of the Fourteenth Amendment to the federal Constitution. He argues that the authorities who obtained the confession failed to comply with the procedural requirements of Chapter 2151, Revised Code, and also that an element of compulsion was present. As authority for his contention appellant cites Gallegos v. Colorado, 370 U. S., 49.
Turning first to the procedural requirements, we find that there was substantial compliance with Chapter 2151. Appellant claims that he was not taken directly before the Juvenile Court upon arrest, in violation of Section 2151.25, Revised Code; and that he was not taken immediately to the court or place of detention designated by the court upon being taken into custody, as required by Section 2151.31, Revised Code.
The law does not require the impossible. As soon as they learned that appellant was there, Ohio authorities flew to California, arriving in the middle of the night. Early the next morning, the Ohio officers contacted the Juvenile Court judge of Los Angeles County, who instructed them to return appellant to Ohio. They took the next jet airplane to Cleveland and proceeded to the Cuyahoga Falls police station from whence the Juvenile Court judge of Summit County was telephoned. Pursuant to the judge’s instructions, appellant was taken to the Summit County Juvenile Detention Home.
Appellant complains of this lapse of time in getting him to the juvenile detention home and also complains that he was far from his parents and friends when confronted by the law-enforcement officers of Summit County. However, it was not the officers’ fault that he was in California; he went there to *159 avoid arrest. Appellant cannot claim that he was deprived of his constitutional rights merely because he was able to flee so far before apprehension.
The claim of compulsion in procuring the confession is not substantiated by the record. It appears that appellant was treated fairly and with consideration by the officials. He was advised of his legal rights, and there is nothing to indicate that he did not understand them. Appellant, himself, testified, as follows, that he confessed voluntarily:
‘ ‘ And so we talked for a while and they asked me if at that time I would care to give a formal statement. And I said ‘Yes, I would, ’ because I wanted to get this over with. I wanted to be all through, I didn’t want to have anything — I wanted to get it off my chest for good.
“And so we had a conversation before they took the statement, it was mostly between Mr. Pappas and myself. He told me that I didn’t have to give this. He said ‘It will be of your own free will.’ But I did want to give it then. I did, like I said before, want to get it off my chest.”
The Gallegos case, on which appellant relies, is readily distinguishable from the case at bar. G-allegos was only 14 years old; appellant was over 17% and had completed the eleventh grade in school. The confession introduced in evidence in the Gallegos case was signed after the accused had been in custody for five days, during which time his mother had made an unsuccessful attempt to see him, and he had not seen an attorney or friendly adult. In this case, the confession was given as soon as the authorities confronted the appellant. It was completed within two hours after they were admitted to see him.
Mr. Justice Douglas, writing for the majority in the Gallegos case, stated:
“There is no guide to the decision in cases such as this, except the totality of circumstances * *
There is nothing in the “totality of circumstances” involved here, which made the confession anything but voluntary. To find that it was inadmissible, we would have to hold that any confession made by a person who is not yet 18 years *160 old is involuntary unless one of his parents or his attorney is present. This is not the law. We, therefore, find that the trial court did not err in admitting the confession into evidence.
The remaining claims of error may be treated together. In an appeal from a conviction in a criminal case, this court is not required to weigh the evidence (Section 2953.02, Revised Code) or retry issues of fact. Our review is confined to a determination of whether there is sufficient evidence to support the verdict rendered. State v. Sheppard, 165 Ohio St., 293, paragraph five of the syllabus. If the record discloses grounds from which a reasonable trier of the facts could conclude that appellant, while legally sane, purposely and with deliberate and premeditated malice killed another, we must affirm the conviction.
On direct examination, appellant testified in detail, as follows, as to the killing:
“* * * I remember I struck her about six or seven times. It was in the back and on the top of the head. She fell to the floor and she just blacked out for just a couple of seconds * * *. And then I started to strike her again. It was during this second succession of blows, I think, I hit her maybe three or four times is all, and she started bleeding pretty bad * * *.
“* '* * I had — well before that I started to strangle her with my hands. I don’t know, she just kept moaning. * * # I couldn’t seem to get enough power out of my hands, she was still moaning. * * * So I remembered the rope which I had in my back pocket and I took the rope out and I placed it around her neck then. And then she was on her stomach and I straddle her back. I remember I started to strangle her with the rope at that time.
“And then I believe I put my knees or my foot or something on the small of her back and I raised up, I believe, I kept putting so much pressure on * * *.
“And so I went ahead and I tightened the rope and I tied a knot in it. Then the respiration or breathing was very slow, but she seemed to be quiet * *
The law presumes that every person is sane until the contrary is shown. To defeat this presumption in a criminal case, the accused must prove by a preponderance of the evidence that he was insane at the time of the crime alleged against him. *161 State v. Austin, 71 Ohio St., 317, paragraph two of the syllabus.
The test for legal sanity in this state is set forth, as follows, in paragraph 15 of the syllabus in State v. Frohner, 150 Ohio St., 53:
“A person accused of a crime who knows and recognizes the difference between right and wrong in respect of the crime with which he is charged, and has ability to choose the right and abjure the wrong is legally sane. ’ ’
Various experts in the area of mental illness testified in the instant case. These experts came to different conclusions on the question of whether appellant had sufficient mental capacity to be held responsible for his act. There is, however, sufficient testimony for the trier of the facts to have found that, at the time of the killing, appellant was legally sane.
In his confession, appellant admits, as follows, that he formed an intent to kill his victim while he was attempting to strangle her:
“Q. Were you squeezing as hard as you possibly could? A. Yes, I was at that time.
“Q. Were your intentions at that time to kill her? A. Yes, they were, sir.
“. . .A. Then I realized I couldn’t do it with my hands so I took out a length of rope and put it around her neck. ’ ’
The intent to kill can also be inferred from the manner in which the killing was accomplished. One is presumed to intend the natural, reasonable and probable consequences of his voluntary acts. State v. Farmer, 156 Ohio St., 214, paragraph three of the syllabus; Riddenour v. State, 38 Ohio St., 272, paragraph two of the syllabus. Appellant is thus presumed to have intended the natural, reasonable and probable consequences of repeatedly striking his victim about the head with a hammer and strangling her with his hands and, later, with a rope.
It has been the law of this state for more than one hundred years that, if a person has actually formed the purpose to maliciously kill another and deliberated and premeditated upon if before he performed the act of killing, he is guilty of murder in the first degree, however short the time may have been between the purpose and the execution. It is not the time of deliberation and premeditation that is requisite, but the actual existence of the purpose, malice, deliberation and premedita *162 tion, and it matters not how short the time, if the party has actually turned it over in his mind and has weighed and deliberated upon it. It makes no difference whether the deliberation was in forming the design maliciously to kill, or, in the continuance of such design after being formed, until the same was executed. Thus, the law fixes no time within which premeditation and deliberation must be had. The time can be a matter of seconds if the situation is such as to enable a person under the circumstances, whatever they may be in the particular case, to turn over and to plan and to execute in pursuance of the plan, a realization of what one is about to do. Shoemaker v. State, 12 Ohio, 18.
Based upon the evidence in this case, reasonable minds can reach different conclusions on the issue of whether defendant is guilty beyond a reasonable doubt. The issue is, therefore, one for determination by the trier of the facts. State v. Antill, 176 Ohio St., 61, paragraph five of the syllabus.
We conclude that the constitutional and statutory rights of the appellant were safeguarded; that the confession was properly admitted into evidence; that the appellant was accorded a fair trial; and that the trier of the facts was justified in finding that appellant was guilty of murder in the first degree beyond a reasonable doubt.
The failure of the trial court to extend mercy to a defendant determined to be guilty of murder in the first degree rests within the discretion of such court and is not reviewable. State v. Ferguson, 175 Ohio St., 390, 398; State v. Frohner, supra, paragraphs 10 and 11 of the syllabus.
Finding no error in the record prejudicial to the appellant, we must affirm the judgment of the Court of Appeals.

Judgment affirmed.

Taft, C. J., Zimmerman, O’Neill, Griffith and Herbert, JJ., concur.
Gibson, J., concurs in paragraphs one, two, three, five and six of the syllabus and in the judgment.
Jones, J., of the Seventh Appellate District, sitting by designation in the place and stead of Matthias, J.