OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Appellant, John Alexander, appeals the decision of the Mahoning County Court of Common Pleas decision overruling his motion to withdraw his plea. Because Alexander waited almost twenty years before filing his motion and because he has failed to prove that a manifest injustice has taken place, the judgment of the trial court is affirmed.
 Facts {¶ 2} In 1982, Alexander was indicated on three counts of aggravated murder, each carrying a death penalty specification, one for each victim. On February 15, 1984, Alexander entered into a written plea of no contest to two counts of aggravated murder with specifications in violation of R.C. 2903.01(B). This plea was the result of a plea bargaining agreement with the prosecutor's office whereby one count was dropped. The State informed Alexander that it would recommend that he receive a sentence of life imprisonment without a chance of parole or probation until he served thirty full years. The State made this recommendation.
 {¶ 3} On February 23, 1984, a mitigation hearing was held to determine the sentencing before a three-judge panel. On February 24, 1984, Alexander was sentenced to two terms of life imprisonment, to run consecutively. On June 2, 1986, this court of appeals affirmed the judgment of the trial court. On September 24, 1986, the Ohio Supreme Court dismissed appellant's case because no substantial constitutional question existed.
 {¶ 4} On November 30, 1988, the trial court denied Alexander's petition for post-conviction and denied him an evidentiary hearing. This court upheld that decision on February 8, 1990. On April 7, 2005, Alexander filed a motion to withdraw his plea. The trial court conducted a hearing on the matter.
 {¶ 5} At this hearing, Roger Alexander, the defendant's brother, testified that he was present during the plea negotiations and explained that at the time of the hearing his brother seemed to be confused about things. Roger testified that he believed his brother was facing 30 years to life in prison based on what he was told by his brother's attorney. He then stated his brother refused to take the thirty years, so it was dropped to twenty to life. This was put into a written plea agreement which was signed by Roger and his brother. Roger then testified that he and his brother were told that the court was "on board" with this plea agreement. When John Alexander was later sentenced to 40 years to life as the two 20 year sentences were to run consecutively, Roger was still convinced that the sentence was 20 to life.
 {¶ 6} Dr. Knake, a clinical psychologist, who examined Alexander at the time of his conviction, then took the stand and testified about his experience with Alexander. Dr. Knake testified that Alexander was suffering from Post Traumatic Stress Disorder caused by his exposure to war in Vietnam. The doctor explained that this disorder would have an effect on an individual's level of comprehension and understanding. The doctor testified that in 1983 during his examination of Alexander, his comprehension level was below average. He later stated that Alexander had a limited capacity for comprehension. The doctor further testified that because of his disorder, he would have needed assistance in understanding his plea agreement. However, the doctor also stated that Alexander had an IQ of 93 which is in the normal range.
 {¶ 7} The trial court heard this testimony and then closing arguments. The trial court then noted that it had not been provided with a complete transcript of the plea hearing. After giving defense counsel several days to produce the transcript, the trial court denied the motion.
 {¶ 8} In that entry, the trial court stated that it had reviewed a portion of the plea hearing transcript, testimony given by Dr. Knake, and testimony given by Alexander's brother. Despite Alexander's claims that he did not understand the terms of his plea agreement and that the court should take into account his mental condition at the time of the plea, the trial court concluded that Alexander was represented by two very competent attorneys who spent sufficient time explaining the plea bargain offer and the benefits and detriments of accepting it.
 Withdrawal of Guilty Plea {¶ 9} As his sole assignment of error, Alexander claims:
 {¶ 10} "The trial court abused its discretion when it overruled Defendant's Motion to Withdraw his Guilty Plea, because Defendant met his burden of establishing that a manifest injustice had occurred when he entered into his plea agreement with the State of Ohio."
 {¶ 11} As a preliminary matter, Alexander failed to file a complete transcript of the initial plea hearing with either the trial court or this court. Therefore, it is impossible for this court to review the actual plea. Generally, when the transcript, or portion thereof, necessary for the determination of an assigned error is omitted, a reviewing court must presume the validity of the proceedings below. SeeHartt v. Munobe, 67 Ohio St.3d 3, 7, 615 N.E.2d 617, 1993-Ohio-177.
 {¶ 12} As stated by the Supreme Court of Ohio in Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 400 N.E.2d 384: "The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. See State v. Skaggs (1978),53 Ohio St.2d 162, 372 N.E.2d 1355. * * * When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings and affirm." Id. at 199, 372 N.E.2d 1355.
 {¶ 13} Accordingly, we could affirm the trial court's decision based upon the fact that we were not provided with a complete copy of the transcript. However, because Alexander's claim is based mainly upon things which would not be reflected in the record, such as his actual mental ability to understand and comprehend what was going on at the hearing, we find the transcript to be largely irrelevant. Thus, we will proceed to address the merits.
 {¶ 14} Crim.R. 32.1 provides: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Thus, with a post-sentence motion to withdraw a guilty plea, only when the appellant can establish that he must be permitted to change his plea to avoid a manifest injustice will a court allow him to withdraw his plea. State v. Smith (1977), 49 Ohio St.2d 261, 361 N.E.2d 1324; Crim.R. 32.1. The logic behind this precept is to discourage a defendant from pleading guilty to test the weight of potential reprisal and later withdrawing the plea if the sentence is unexpectedly severe. State v.Caraballo (1985), 17 Ohio St.3d 66, 477 N.E.2d 627, citing State v.Peterseim (1980), 68 Ohio App.2d 211, 428 N.E.2d 863.
 {¶ 15} "Manifest injustice" is an extremely high standard, which permits the withdrawal of a guilty plea only in extraordinary cases.Smith, 49 Ohio St.2d at 264, 361 N.E.2d 1324. The decision to grant or deny a post-sentence motion to withdraw a guilty plea is within the sound discretion of the trial court. Id. at paragraph two of the syllabus. We review the court's action on a post-sentence motion to withdraw a guilty plea for an abuse of discretion. State v. Xie (1992),62 Ohio St.3d 521, 526, 584 N.E.2d 715.
 {¶ 16} Here, Alexander claims that he did not knowingly and voluntarily plead no contest to the charges against him. Notably, Alexander presented this court with a similar claim in his 1990 appeal from the court's denial of post-conviction relief.
 {¶ 17} In that appeal, Alexander asserted that the record did not reflect that his plea was the result of plea bargaining. He argued that the concealment of plea bargaining is basically offensive to the court's objective determination of the issue of voluntariness and the voluntariness of the plea cannot adequately be assured without consideration of the bargain. Alexander concluded that because the record made no mention of plea bargaining, his voluntariness cannot be determined by the record. Therefore, according to appellant, the court violated his right to due process and Crim.R. 11.
 {¶ 18} Alexander further argued in this post-conviction appeal that his plea was induced as he understood that Count I of the indictment would be dismissed, and that on Counts II and III he would be sentenced to two terms of twenty years to life to run concurrently. Alexander attached three affidavits of family members who stated that his attorney informed them of the above agreement. Alexander concluded that the events that took place at his sentencing phase "can only be described as shocking and an insult to the fair administration of justice." Alexander believed he was entitled to at least an evidentiary hearing "to establish a record on the merits of such serious allegations."
 {¶ 19} This court found those claims to be meritless explaining:
 {¶ 20} "Pursuant to State v. Ishmail (1981), 67 Ohio St.2d 16, these issues could have been raised on direct appeal and are therefore res judicata. In addition, however, the agreement was made a part of the record. The transcript demonstrates, at pages 3-17, that the underlying plea agreement between appellant, appellant's counsel, and the prosecutor was read in open court by the trial court. Further it was made clear to appellant that the plea agreement was merely a recommendation and not an explanation of what would be the final sentence. The transcript indicates the dialogue between appellant, defense counsel, the prosecutor, and the trial court, at pages 15-17:
 {¶ 21} "'MR. INGRAM: Excuse me, Your Honor. As to that particular point, I believe that there should be a point of clarification, that the recommendation of the Prosecutor will be that there be a sentence of thirty full years in a State penal institution, and that any period of incarceration under count two be run concurrently with count three; is that correct, Mr. Coyle?
 {¶ 22} "'MR. COYLE: That's correct, Your Honor.
 {¶ 23} "'JUDGE ECONOMUS: "I further understand that this is merely a recommendation to the three-judge panel and not binding on the Court, which may choose to impose any of the sentences enumerated in section two of this plea." Do you understand that, Mr. Alexander; this is merely a recommendation?
 {¶ 24} "'MR. ALEXANDER: Yes, sir.
 {¶ 25} "'JUDGE ECONOMUS: "I further understand that at the mitigation hearing the State of Ohio will not rebut any evidence submitted on my behalf to establish the existence of a mitigating circumstance." Do you understand that?
 {¶ 26} "'MR. ALEXANDER: Yes, sir.
 {¶ 27} "'JUDGE ECONOMUS: I understand that following the evidentiary proceeding and mitigation hearing, that I have a right of appeal if the circumstances so warrant it, and to have an attorney appointed to prosecute said appeal, if I'm indigent.' Do you understand that, Mr. Alexander?
 {¶ 28} "'MR. ALEXANDER: Yes, sir.
 {¶ 29} "'JUDGE ECONOMUS: `Further, I may, under certain circumstances, which have been explained to me by my counsel, have a right of mandatory review by the Court of Appeals pursuant to Ohio Revised Code Sections2929.03, 2929.04, and 2929.05.' Has that been explained to Mr. Alexander?
 {¶ 30} "'MR. INGRAM: Yes, it has, Your Honor.
 {¶ 31} "'JUDGE ECONOMUS: Do you understand the meaning of that, Mr. Alexander?
 {¶ 32} "'MR. ALEXANDER: Yes, sir."
 {¶ 33} "The record clearly demonstrates the plea arrangement offered by the State. The trial court made it clear that the State merely recommended that the sentences be run concurrently and not consecutively." State v. Alexander (Feb. 8, 1990), 7th Dist. No. 88 CA 218 at 3.
 {¶ 34} Although Alexander's post-conviction appeal raised the issue of whether or not his plea was made voluntarily and knowingly, it does not bar Alexander's motion to withdraw his plea. This is because the issues raised in this appeal could not have been raised on post-conviction as they are not claims of a constitutional nature. However, the fact that Alexander was raising claims regarding his plea in 1990 raises flags as to why he waited until 2005 to attempt to withdraw his plea. This lag in time may actually be sufficient justification in and of itself for the trial court to have denied Alexander's motion.
 {¶ 35} Although there is no time limit for filing a Crim.R. 32.1 motion, undue delay between the occurrence of the alleged cause for withdrawal of a guilty plea and the filing of a motion under Crim.R. 32.1 is a factor that affects the credibility of the defendant and mitigates against the granting of the motion. State v. Smith (1977),49 Ohio St.2d 261, 361 N.E.2d 1324, at paragraph three of the syllabus. Other courts have found much lesser lapses of time to be prejudicial to a defendant's motion. See State v. Wangul (Mar. 17, 2005), 8th Dist. No. 84698 (defendant waited nine months to file motion); State v.Madeline (Mar. 22, 2002) 11th Dist. No 2000-T-0156 (defendant waited two and a half years); State v. Mootispaw (Sept. 18, 2002) 9th Dist. No. 01CA007958 (defendant waited three and a half years); State v.Scarnati (Feb. 22, 2002), 11th Dist. No 2001-P-006 (defendant waited four years); State v. Graham (June 14, 2004), 3d Dist. No. 5-04-02 (defendant waited six years); State v. Azan (June 28, 2004) 12th Dist. No. CA2003-09-247(defendant waited seven years).
 {¶ 36} In the present case, Alexander waited almost 20 years after his plea to file this motion to withdraw his plea. Moreover, the evidence that he has presented in support of this motion has been available for just as long considering his brother was present at the time of the plea and Dr. Knake's report had already been prepared for counsel. Considering the fact that Alexander was facing the death penalty for causing the deaths of three people, it would be difficult to say that, given the evidence provided to the trial court and the lapse in time between the plea and Alexander's motion, the trial court abused its discretion in finding that no manifest injustice has taken place.
 {¶ 37} Accordingly, Alexander's sole assignment of error is meritless and the judgment of the trial court is affirmed.
Donofrio, P.J., concurs.
Vukovich, J., concurs.