[Cite as *State v. Beal*, 2012-Ohio-1408.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 11 BE 4 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| JAMES KENNETH BEAL, Jr., | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from Common Pleas Court, Case No. 05 CR 240.

JUDGMENT:     Affirmed.

APPEARANCES:

For Plaintiff-Appellant:     Attorney Chris Berhalter
Prosecuting Attorney
Attorney Helen Yonak
Assistant Prosecuting Attorney
147-A W. Main Street
St. Clairsville, OH 43950

For Defendant-Appellee:     Attorney John A. Vavra
132 West Main Street
P.O. Box 430
St. Clairsville, OH 43950

JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich

Dated: March 22, 2012

DeGenaro, J.

{¶1} Plaintiff-Appellant, the State of Ohio, appeals the January 7, 2011 judgment of the Belmont County Court of Common Pleas that granted Defendant-Appellee James Kenneth Beal, Jr.'s post-sentence motion to withdraw his guilty plea, vacated his gross sexual imposition conviction, dismissed the case against him, terminated his sex offender registration requirements and restored all civil rights he lost as a result of the conviction. On appeal, the State contends that the court the court lacked jurisdiction to rule upon the motion, and that it even if it had jurisdiction it abused its discretion by permitting Beal to withdraw his plea.

{¶2} Upon review, the State's arguments are meritless. The trial court's decision was reasonable given the alleged victim's testimony that she concocted the sexual abuse allegations as revenge against Beal, along with her therapist's testimony that he believed she was being truthful when she later told him she fabricated the allegations. The resolution of the motion largely turned on credibility determinations best made by the trial court. It is impossible for this court to fully assess the credibility of the witness given the one-dimensional nature of the record upon which we review this case. Not only did the victim totally recant, her therapist testified that he believed her recantation. The trial court was in the best position to evaluate the credibility of these two witnesses. Moreover, we find no error of law. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶3} On October 5, 2005, Beal was indicted on one count of gross sexual imposition (R.C. 2907.05(A)(4)), a third-degree felony. He was accused of having sexual contact with his daughter L.B., who was under age 13 at the time. According to the bill of particulars, the alleged sexual contact consisted of Beal forcing L.B. to touch his erect penis. Beal was arraigned and pled not guilty. According to juvenile court documents in the record, after learning that L.B. had reported the abuse to police, L.B.'s mother did not believe the allegations and Beal maintained his innocence. As a result, L.B. was adjudicated an abused child and placed in the temporary custody of the Department of Job and Family Services – Children Services.

{¶4} On February 6, 2006, Beal filed a multi-branch motion in which he

requested, inter alia, an order unsealing L.B.'s grand jury testimony, which the State opposed. The trial court overruled the motion for disclosure of grand jury testimony, "given the State's stipulation [t]hat the victim told the Grand Jury 'she had made up the allegations.' "

{¶5} On December 13, 2006, Beal entered into a negotiated Crim.R. 11 plea agreement with the State, in which he agreed to plead guilty to the lesser offense of attempted gross imposition (R.C. 2923.02 and 2907.05(A)(4)), a fourth-degree felony. In exchange, the State agreed to recommend that any period of incarceration be suspended, and that Beal be placed on community control. Beal also agreed to participate in counseling, comply with any recommended counseling measures and to have no contact with L.B. unless recommended by the counselors. A combined plea and sentencing hearing was held, a transcript of which the State *did not* order for the appellate record.

{¶6} The trial court sentenced Beal to one year in jail, all suspended, with five years of community control sanctions. Beal stipulated that he was a "sexually-oriented offender" pursuant to then R.C. 2950.03 and Beal was notified of his registration requirements.

{¶7} Meanwhile, L.B. was moved from foster care to the custody of her older sister.

{¶8} In 2007, Beal's community control was revoked because he was unsuccessfully terminated from a sex offender intervention program for maintaining his innocence during counseling sessions. The trial court sentenced him to six months in the Belmont County Justice Center.

{¶9} The intervention program subsequently agreed to readmit Beal and on June 27, 2007, over the State's objections, but pursuant to L.B.'s request, Beal was released from jail, subject to continued counseling. The court also lifted the TPO concerning L.B., to facilitate her request for reunification with her father.

{¶10} Beal and L.B. began family counseling with Dr. John Heilmeier on June 1, 2007, and this continued until March 28, 2008. L.B. began to have some supervised

visitation with her father in August 2007. On September 26, 2007, upon recommendation of his probation officer, Beal's probation was reduced from intensive to basic supervisory probation.

**{¶11}** On February 5, 2009, by order of the juvenile court, L.B., who by that time was almost 17 years old, was returned to the custody of her parents.

**{¶12}** On February 27, 2009, Beal filed a motion to withdraw his guilty plea. As grounds, he stated that L.B. had absolutely recanted her allegations. He stated that at a hearing on the matter, both L.B. and her therapist would testify that the sexual abuse did not occur. He requested that the court permit him to withdraw his plea, and to then vacate his conviction and terminate his registration requirements. Alternatively, in lieu of dismissal he requested "a new trial based on newly discovered evidence." The State filed a brief in opposition and the motion finally came for hearing on November 22, 2010.

**{¶13}** Beal called Dr. Heilmeier, a psychotherapist, as a witness. Dr. Heilmeier testified that he counseled Beal and L.B. between June 1, 2007 and March 25, 2008, once or twice per month. At that time, L.B. was 14-15 years old. Dr. Heilmeier had been referred by the juvenile court to perform family counseling.

**{¶14}** At the end of the sessions, Dr. Heilmeier would meet with L.B. privately. During these meetings, L.B. denied she felt that she was in any harm or danger. L.B. also told him privately that the abuse allegations never happened, that she had "made them up," because she was mad at her father. Dr. Heilmeier's expert opinion was that L.B. was telling him the truth when she told him the allegations were false.

**{¶15}** On cross, Dr. Heilmeier testified that he never read the statements Beal or L.B. made to police. Over objections, Dr. Heilmeier was asked if he was aware that others, including L.B.'s sister, had made sexual abuse allegations against Beal in the past. He responded that he was unaware of that, and even had he known about them it would not have changed his opinion about the truthfulness of L.B.'s recantation.

**{¶16}** The State called L.B.'s caseworker from Children's Services, Michelle Burkhart as a witness. Burkhart testified that her agency first got involved with the Beal family in 1998, when L.B.'s sister and her sister's friend made sexual abuse allegations

against Beal. According to Burkhart, Beal was asked to leave the home for a period of time, but no criminal charges resulted. Then in 2005, her agency took emergency custody of L.B. due to her allegations against Beal. While L.B. was out of her parents' custody, her prior caseworker received calls that L.B.'s mother was trying to convince L.B. to recant, which resulted in supervised visitation for the mother.

{¶17} Burkhart testified that L.B. had always maintained both to her and to the prior caseworker, that the allegations were true. In April 2009, after Beal filed the motion to withdraw his plea, Burkhart said she met with L.B., who had been returned to the custody of her parents by that time. Burkhart said L.B. again told her the allegations were true and added some additional details that she had not previously disclosed.

{¶18} Beal had planned to call L.B. as a witness, however the trial court decided to postpone L.B.'s testimony until she had time to consult with an attorney, which the court appointed for her. At the time of that first hearing, L.B. had turned 18, however, the trial court wanted to make sure she understood the potential legal ramifications of testifying.

{¶19} The hearing resumed on December 20, 2010. L.B. testified she had met with appointed counsel, she was testifying voluntarily, and that no person had promised her anything in exchange for her testimony, nor had anyone threatened her or coerced her to testify. L.B. testified that she fabricated the allegations because she was mad at her father for refusing to facilitate her relationship with her then-boyfriend. She stated unequivocally that none of the allegations ever occurred; she made up the whole story. L.B. testified that she was not concerned with the legal consequences that she could potentially face as a result of her testimony; she wanted to tell the truth. On cross, she admitted she had changed her story many times throughout the years, however, she maintained her present testimony was truthful.

{¶20} On January 7, 2011, the trial court issued a judgment entry sustaining Beal's motion to withdraw his guilty plea to correct manifest injustice. The trial court therefore vacated Beal's conviction, terminated his registration requirements, restored all of his civil rights and dismissed the case.

{¶21} On January 11, 2011, the State filed a motion for findings of fact and conclusions of law. That same day, without waiting for a response, the State filed a timely notice of appeal. On February 23, 2011, this court issued a judgment entry noting that the State had failed to file a separate motion for leave to appeal, without which this court lacks jurisdiction to hear the case. The parties were granted 20 days to file jurisdictional memoranda addressing this issue. On March 4, 2011 the State filed a motion for leave to appeal. Beal did not file a jurisdictional memorandum. This court concluded that pursuant to R.C. 2945.97(A), the State had the right to appeal the January 7, 2011 judgment.

**Trial Court's Jurisdiction to Hear the Motion**

{¶22} In its first of two assignments of error, the State asserts:

{¶23} "The trial court erred in hearing the Appellee's motion to withdraw his guilty plea five years after sentencing since the trial court no longer had jurisdiction on the case."

{¶24} The State first argues that there must be a threshold showing of manifest injustice in order for the trial court to have jurisdiction to hear a post-sentence motion to withdraw a guilty plea. However, the State cites no authority for the proposition.

{¶25} "A trial court *maintains* jurisdiction over a case so that it may correct a manifest injustice because of a past plea. Crim.R. 32.1 states, 'to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.' Crim.R. 32.1 'enlarges a trial court's power over its judgments and allows the court to consider a defendant's motion to withdraw post-sentencing.'" (Emphasis added.) *State v. Harack*, 12th Dist. No. CA2011-01-003, 2011-Ohio-6021, at ¶11, quoting *State v. Tate*, 8th Dist. No. 83582, 2004-Ohio-2979, at ¶10. Here, Beal filed a motion to withdraw his plea, thereby properly invoking the trial court's jurisdiction. Thus, the manifest injustice requirement goes to the merits of the motion, not to the trial court's jurisdiction to hear it.

{¶26} This is not to say that the continuing jurisdiction of Crim.R. 32.1 has no procedural limits. "Ohio case law is clear that a defendant cannot petition the trial court to withdraw his past plea on manifest injustice grounds when that defendant has appealed

his conviction and such conviction has been affirmed by an appellate court." *Harack* at ¶12. *See also State v. Parks*, 7th Dist. No. 08 CA 857, 2009-Ohio-4817, ¶7, citing *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 378 N.E.2d 162 (1978). Here, Beal never filed a direct appeal from his conviction and sentence. Because the trial court had jurisdiction to hear Beal's motion to withdraw his plea, the State's first assignment of error is meritless.

### Ruling on Motion to Withdraw Guilty Plea

{¶27} In its second and final assignment of error, the State asserts:

{¶28} "The trial court erred in letting Appellee withdraw his guilty plea without a showing of newly discovered evidence or manifest injustice."

{¶29} Contrary to the State's assertions, success on a post-sentence motion to withdraw a guilty plea does not require a showing of newly discovered evidence. That requirement is a branch of Crim.R. 33, which governs motions for a new trial. "A plea of guilty in a criminal case precludes the defendant from thereafter making a motion for a new trial." *State v. Frohner,* 150 Ohio St. 53, 80 N.E.2d 868 (1948), at paragraph thirteen of the syllabus. *Accord State v. Woodley*, 8th Dist. No. 83104, 2005-Ohio-4810, ¶8.

{¶30} Crim.R. 32.1 governs motions to withdraw a guilty plea and states: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1; *State v. Bush*, 96 Ohio St.3d 235, 2002-Ohio-3993, 773 N.E.2d 522, ¶8; *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324, (1977), at paragraph one of the syllabus. A "manifest injustice" can only be established in "extraordinary cases" and has been defined by the Ohio Supreme Court as a "clear or openly unjust act." *Smith*, 49 Ohio St.2d at 264, 361 N.E.2d 1324; *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998). The purpose of the manifest injustice requirement is to avoid the possibility of a defendant pleading guilty to test the weight of potential punishment. *Smith* at 264.

{¶31} The timing of the motion to withdraw is one factor that a trial court may

consider in deciding it. "Although there is no time limit for filing a Crim.R. 32.1 motion, undue delay between the occurrence of the alleged cause for withdrawal of a guilty plea and the filing of a motion under Crim.R. 32.1 is a factor that affects the credibility of the defendant and mitigates against the granting of the motion." *State v. Alexander*, 7th Dist. No. 05 MA 221, 2006-Ohio-7049, ¶35. Contrary to the State's argument, the timing of the motion is not the sole dispositive consideration.

{¶32} Importantly, the "good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved" by the trial court. *Id.* Thus, an appellate court reviews the disposition of a motion to withdraw a guilty plea for an abuse of discretion. *State v. Carabello*, 17 Ohio St.3d 66, 67, 477 N.E.2d 627 (1985). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶33} The resolution of this case turned in large part on credibility determinations. Prior to testifying at the hearing on the motion to withdraw, L.B., who by then was 18 years old, consulted with counsel about the ramifications of her testimony. She testified she had concocted the allegations because she was mad at her father for not facilitating her relationship with her boyfriend. L.B. was unequivocal in her recantation, and stated that she was willing to take any potential criminal or civil consequence that flowed therefrom:

{¶34} Q. Did your father in any way participate in improper activities with you?

{¶35} A. No, in no way, shape or form.

{¶36} Q. You talked to your attorney about -- I don't want to know what she said, but have you talked to your attorney about the possible consequences of your coming in today and testifying?

{¶37} A. Yes.

{¶38} Q. Are you concerned at all about those consequences?

{¶39} A. No, because even if any consequences were to come out of it, I

know now that I am telling the truth, compared to back when I wasn't telling the truth. This is what's right now, is what I'm doing now."

{¶40} L.B.'s counselor testified that L.B. told him during therapy that she fabricated the allegations because she was mad at her father. He believed her recantation was truthful. Even when he learned, during cross-examination that prior abuse allegations had been made against Beal by other girls, he was steadfast in his belief that L.B. had concocted her allegations. He stated that in his expert opinion, L.B. was being honest with him when she told him the allegations were false.

{¶41} On the other hand, the State presented testimony from Michelle Burkhart, L.B.'s Children's Services caseworker, that L.B. had always told her, even as late as 2009, that the allegations were true. In the end, it was up to the trial court to determine the veracity and credibility of the witnesses since it had the opportunity to observe their demeanor. It was well within the court's discretion to determine that L.B. was being truthful when she testified that she fabricated the charges.

{¶42} Although there are no cases directly on point from a factual standpoint, in *State v Johnson*, 5th Dist. No. CT2009-0015, 2009-Ohio-4398, the trial court granted a post-sentence plea withdrawal, where following sentencing the defendant discovered that a key state's witness for the suppression hearing was under an ongoing federal investigation related to dishonesty and abuse of his office as a police officer. *Id.* at ¶5. The Fifth District affirmed, noting that credibility determinations fall within the sound discretion of the trial court:

> The trial court had before it all of the information presented both at the oral hearing and through the written brief submitted post-hearing and apparently gave great weight to the arguments of appellee. We will not second-guess the trial court's credibility and weight determinations. Id. at ¶19.

{¶43} It is impossible for this court to fully assess the credibility of the witness given the one-dimensional nature of the record upon which we review this case. Not only

did the victim totally recant, her therapist testified that he believed her recantation. The trial court was, and is, in the best position to evaluate the credibility of the witnesses. Thus, the State's second assignment of error is meritless.

**{¶44}** In conclusion, Beal's motion was not jurisdictionally barred. And the resolution of the motion largely turned on credibility determinations best made by the trial court, and we find no error of law. Accordingly, the judgment of the trial court is affirmed.

Waite, P.J., concurs.

Vukovich, J., concurs.